# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **DYNAMIC DATA TECHNOLOGIES, LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Case No. 2:18-cv-466-RWSF |
| | § | **FILED UNDER SEAL** |
| **GOOGLE LLC AND YOUTUBE, LLC,** | § | |
| | § | **REDACTED** |
| *Defendants.* | § | |
| | § | |

## DEFENDANTS GOOGLE LLC AND YOUTUBE, LLC'S MOTION TO DISMISS UNDER RULE 12(B)(3) and 12(B)(6)

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................... 1

II.  STATEMENT OF ISSUES TO BE DECIDED BY THE COURT (L.R. CV-7(A)(1)) ................................................................................................................... 3

III.  FACTUAL BACKGROUND ......................................................................................... 3

    A.  DDT's Complaint, the Personal Audio Decision, and Pending SEVEN Appeal ............................................................................................................... 3

    B.  Google's GGC Servers ................................................................................... 5

IV.  VENUE IS NOT PROPER IN THE EASTERN DISTRICT OF TEXAS ...................... 6

    A.  Defendants Do Not Reside In This District .................................................... 7

    B.  DDT Cannot Prove That Defendants Have A "Regular and Established Place Of Business" In This District Under Cray's Three Factor Test ..................... 7

        1.  Cray Factor 1: GGC Servers Are Not "Physical Places Of Business" ......... 8

        2.  Cray Factor 2: GGC Servers Are Not "Regular And Established" ............ 10

        3.  Cray Factor 3: The GGC Servers are Not Ratified Places of Business ...... 11

V.  THE COMPLAINT FAILS TO STATE PLAUSIBLE CLAIMS OF PRE-SUIT WILLFULNESS OR INDIRECT INFRINGEMENT ....................................................... 12

VI.  CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................ 2, 13

*Babbage Holdings, LLC v. Activision Blizzard, Inc.*,
  Civ. No. 2:13-750-JRG, 2014 WL 2115616 (E.D. Tex. May 15, 2014) ................... 13

*Bell Atlantic Corporation v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................... 2, 12, 13

*BMC Software, Inc. v. Cherwell Software, LLC*,
  No. 1:17-cv-1074, Dkt. 55 (E.D. Va. Dec. 21, 2017) ............................................ 8

*Cascades Comp. Innovation, LLC v. Samsung Elecs. Co. Ltd.*,
  77 F. Supp. 3d 756 (N.D. Ill. 2015) .................................................................... 14

*CDx Diagnostic, Inc. v. U.S. Endoscopy Grp., Inc.*,
  No. 13-CV-5669(NSR), 2018 WL 2388534 (S.D.N.Y. May 24, 2018) ................... 10

*Corydoras Techs., LLC v. Apple Inc.*,
  No. 2:16-CV-00538-JRG, 2016 WL 9242435 (E.D. Tex. Nov. 23, 2016) ................ 13

*CUPP Cybersecurity, LLC, et al. v. Symantec Corp.*,
  C.A. No. 3:18-CV-01554 (N.D. Tex. Dec. 21, 2018) ......................................... 5, 10

*Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*,
  2016 WL 1019667 (D. Del. Mar. 15, 2016) ........................................................ 14

*Halo Elecs., Inc. v. Pulse Elecs, Inc.*,
  136 S. Ct. 1923 (2016) ......................................................................................... 13

*HomeBingo Network, Inc. v. Chayevsky*,
  428 F. Supp. 2d 1232 (S.D. Ala. 2006) .................................................................. 9

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017) .................................................................... passim

*In re Google LLC*,
  No. 2018-152, 2018 WL 5536478 (Fed. Cir. Oct. 29, 2018) ............................... 1, 4

*In re ZTE (USA) Inc.*,
    890 F.3d 1008 (Fed. Cir. 2018).........................................................................................7

*Magee v. Coca-Cola Refreshments USA, Inc.*,
    833 F.3d 530 (5th Cir. 2016) ............................................................................................9

*Personal Audio LLC v. Google Inc.*,
    280 F. Supp. 3d 922 (E.D. Tex. 2017) (J. Clark).............................................. passim

*Regents of Univ. of Minn. v. Gilead Scis., Inc.*,
    299 F. Supp. 3d 1034 (D. Minn. 2017)..........................................................................10

*SEVEN Networks, LLC v. Google LLC*,
    315 F. Supp. 3d 933 (E.D. Tex. 2018) (J. Gilstrap)......................................... passim

*State Indus., Inc. v. A.O. Smith Corp.*,
    751 F.2d 1226 (Fed. Cir. 1985).....................................................................................14

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
    137 S. Ct. 1514 (2017)...................................................................................... passim

## Statutes

28 U.S.C. § 1400(b) .........................................................................................1, 4, 6, 10

## Other Authorities

L.R. CV-7(A)(1) ...............................................................................................................3

Rule 12(b)(3)...............................................................................................................1, 3

Rule 12(b)(6).....................................................................................................1, 2, 3, 15

## I.      INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6), Defendants Google LLC and YouTube, LLC (collectively "Defendants") move to dismiss the complaint filed by Dynamic Data Technologies, LLC ("DDT") for (1) improper venue and (2) failure to state a claim.

*First*, decisions in this district have reached different results as to whether patent venue is proper as to Google.  In *SEVEN Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933 (E.D. Tex. 2018) (J. Gilstrap), the Court found that patent venue was proper as to Google.  The Federal Circuit's per curiam decision on a petition for a writ of mandamus in that same matter, *In re Google LLC*, No. 2018-152, 2018 WL 5536478 (Fed. Cir. Oct. 29, 2018), declined mandamus review and noted that the Federal Circuit would benefit from letting the venue question further "percolate in the district courts."  *Id*. at *3.  On November 13, 2018, Google filed a petition for rehearing en banc of the Federal Circuit's decision, which is currently pending.

As the *SEVEN Networks* decision notes, its result contradicts the prior decision in *Personal Audio LLC v. Google Inc.*, 280 F. Supp. 3d 922 (E.D. Tex. 2017) (J. Clark), in which this District held that venue was not proper as to Google.  Defendants submit that *Personal Audio* was correctly decided and venue is improper for the reasons it noted.  In view of the Federal Circuit's stated desire for the question to be further developed in the district courts and to preserve its rights— including if the Federal Circuit revisits or otherwise reverses the decision in *SEVEN Networks*— Defendants respectfully move under Rule 12(b)(3) to dismiss DDT's Complaint because venue is not proper in this District under 28 U.S.C. § 1400(b).

Under the Supreme Court's *TC Heartland* decision, venue in a patent case is only proper (1) where the defendant is incorporated, or (2) in a district in which the defendant has a regular and established place of business and has committed acts of infringement.  Today (and at the time of the Complaint), Google and YouTube are incorporated in Delaware and have principal places of

business outside this District.  Defendants do not have any place of business in this District, much less one that qualifies as "regular and established" under the standards that the Federal Circuit set forth in *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).  The only "place of business" alleged in DDT's Complaint is Google's Edge Nodes (which we understand to mean Google Global Cache edge servers, hereafter referred to as "GGC servers") located in this District,[1] but the GGC servers are insufficient to establish venue under *TC Heartland* and *Cray*, as noted in *Personal Audio*, because the servers: (a) are merely computers, not physical facilities, real property, or places; (b) are manufactured and sold by third parties; and (c) are located, installed, hosted, and managed by third parties.  The GGC servers serve the limited purpose of temporarily storing or "caching" Google content and the GGC servers that were used in the District at the time of the complaint represented just a fraction of one percent of Google's total serving capacity in the U.S.

*Second*, DDT's claims of induced and willful infringement based on pre-suit activities should be dismissed under Rule 12(b)(6) for failing to conform with the pleading standards of *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009).  To date, DDT has brought thirteen complaints against makers of mobile phones, tablets, laptops, and televisions.  DDT, a non-practicing entity, alleges that the defendants infringe more than ten different patents that it acquired from other companies on the secondary market. The complaints, including the one against Google and YouTube, are a cut-and-paste exercise of boilerplate allegations that are nearly identical from one complaint to the next.

---

[1] Because DDT's complaint relies solely on the presence of Google GGC servers in the District, DDT's complaint contains no allegations as to any YouTube "place of business" located in the Eastern District of Texas.

2

DDT's conclusory allegations are insufficient to state a claim for induced or willful infringement for any pre-suit conduct. Induced and willful infringement require knowledge of both the asserted patents and the potential infringement. However, DDT's allegations do not state a plausible claim of such knowledge by Defendants prior to service of the complaint. DDT's only two alleged bases for pre-suit knowledge—(1) communications in which DDT called out *other patents* not asserted here, and (2) a Google patent's citation to a pending application rather than any issued patent—have been rejected by the Federal Circuit and other courts.

## II.     STATEMENT OF ISSUES TO BE DECIDED BY THE COURT (L.R. CV-7(A)(1))

1.     Should this case be dismissed under Federal Rule of Civil Procedure 12(b)(3) for improper venue over Defendants in this District?

2.     Should DDT's claims for willful and induced infringement based on pre-suit activities be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to plead facts sufficient to make out a plausible claim?

## III.     FACTUAL BACKGROUND

### A.     DDT's Complaint, the *Personal Audio* Decision, and Pending *SEVEN* Appeal

DDT is a limited liability company organized under the laws of Delaware. Compl. ¶ 14. DDT filed complaints across the country against thirteen different electronics companies who market goods such as mobile phones, tablets, laptops, and televisions. DDT's complaints assert various overlapping combinations of patents, all related generally to video processing technologies. DDT filed its complaint against Defendants on November 5, 2018, alleging that Defendants infringe ten patents through the Google Cloud Platform; Google Chromecast, Cast, and Pixel devices; various "YouTube products;" Google Photos, Google Duo, and Android 5.0+. *See* Compl. ¶¶ 120, 142, 164, 187, 207, 228, 248, 270, 291, 316.

3

DDT alleges that venue is proper because "Google maintains several Edge Node servers throughout the Eastern District of Texas. The physical presence of these Edge Node servers, along with Google's exclusive control over these servers constitutes a regular and established place of business under 28 U.S.C. § 1400(b)." Compl. ¶ 30. DDT also cites to this District's *SEVEN Networks* decision and the Federal Circuit's decision denying Google's mandamus petition. *Id*.

But, in denying mandamus relief, the Federal Circuit did not affirm the *SEVEN Networks* decision or otherwise find venue proper based on the GGC servers. Instead, the Federal Circuit stated it was declining mandamus review ***without reaching the merits*** of whether the GGC servers constitute a "regular and established place of business." *In re Google LLC*, 2018 WL 5536478, at *2.[2] The Federal Circuit explained "it is not known if the district court's ruling involves the kind of broad and fundamental legal questions relevant to § 1400(b) that we have deemed appropriate for mandamus" and that it would let the issue "percolate in the district courts." *Id*. at *3.

Indeed, courts in this District have reached different results regarding Google's GGC servers. The *SEVEN Networks* decision acknowledges that it contradicts the prior result reached in *Personal Audio* on the same controlling facts concerning Google's GGC servers. 315 F. Supp. 3d at 950. In *Personal Audio*, the court revisited a prior denial of a motion to dismiss for improper venue following *TC Heartland* and concluded Google's GGC servers were not a "regular and established place of business" in view of the factors identified by the Federal Circuit in *Cray*. 280 F. Supp. 3d at 925, 932-35. In reaching this result, the *Personal Audio* decision explained that "conclud[ing] that Google's business was being carried out by these servers would have far-reaching consequences that distort the scope of the statute; for example, every single AT&T tower

---

[2] The Federal Circuit also did not decide the separate issue of whether there must be a "relationship between the 'regular and established place of business' requirement and the 'acts of infringement' requirement" in § 1400(b), because that issue, while unsettled, was "insufficient to show a 'clear and indisputable' right to support mandamus." *Id*. at *3.

would then possibly become a place of business for AT&T." *Id.* at 934.  Judge Lynn recently echoed this concern and agreed with *Personal Audio* that servers at a third-party's data center in Dallas were not a "regular and established place of business" in *CUPP Cybersecurity, LLC, et al. v. Symantec Corp.*, C.A. No. 3:18-CV-01554 (N.D. Tex. Dec. 21, 2018).  Ex. A at 6.

On November 13, Google filed a petition for rehearing on the Federal Circuit's *SEVEN Networks* decision, and the Federal Circuit subsequently ordered the respondent to file a response. Ex. B.  Decision on the rehearing petition is pending.

### B.    Google's GGC Servers

Google's briefing before the Federal Circuit and this Court in *SEVEN Networks* and in *Personal Audio* presented a number of undisputed facts that are equally applicable to the venue inquiry in this case.  As an initial matter, when DDT filed its complaint:  (1) Defendants did not (and still do not) own or lease "any office space, retail space, or other real property in the Eastern District of Texas" (Ex. C, Lim Declaration ("Lim Decl.") ¶ 3); (2) Defendants had (and have) no employees who work at any Google or YouTube offices in this District (Ex. D, Durbin Declaration ("Durbin Decl.") ¶ 7); and (3) Google's only Texas offices were (and are) located in Austin, San Antonio and Dallas (Addison), cities outside this District, while YouTube does not have any offices in Texas (Lim Decl. ¶ 4).

The GGC servers, meanwhile, are just one part of a tiered network of computer infrastructure that allows Google to quickly and reliably deliver content to Internet users.  The core of this network is Google's data centers, which provide computation and backend storage.  Ex. E, McCallion Declaration ("McCallion Decl.") at ¶ 3.  There are a handful of Google data centers in the U.S., none of which are in Texas.  *Id.*, Lim Decl. ¶ 5.  The next tier of Google's network infrastructure is known as "Edge Points of Presence" ("PoPs"), which connect Google's network

to the rest of the Internet.  McCallion Decl. ¶ 4.   Google has no PoPs in the Eastern District of Texas.  *Id.*

The last tier of the network are the GGC servers or "edge nodes."  McCallion Decl. ¶ 5.  GGC servers are computers hosted at the facilities of local Internet Service Providers ("ISP").  *Id.* ¶ 6.  If an ISP chooses to host a GGC server, then a copy of certain digital content that is popular with the ISP's subscribers can be temporarily "cached" on that GGC server.  *Id.*  By caching content at an ISP's GGC server, the ISP does not need to fetch the content from outside its network and use up medium or long-haul network capacity to do so.  *Id.*  GGC servers, however, are not necessary for the delivery of Google content to users.  *Id.*  The GGC servers that were used in this District at the time of the complaint represented a fraction of one percent of Google's total serving capacity in the U.S.  *Id.* ¶ 7.

GGC servers are off-the-shelf computers that are manufactured by third party computer manufacturers and are typically directly shipped to ISPs by third-parties, not by Google.  McCallion Decl. ¶ 6.  After receiving the GGC servers, the ISP unpacks, locates, installs, and hosts them in its own facility.  McCallion Decl. ¶ 9.  Google does not own, lease, or control the space where the servers are kept.  McCallion Decl. ¶ 10.  No Google employee has ever seen or visited the servers in this District.  *Id.*  ██████████████████████████

████████████████████████████████████████████████

McCallion Decl. ¶ 12.

## IV.    VENUE IS NOT PROPER IN THE EASTERN DISTRICT OF TEXAS

In a patent case, venue lies only "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  "[U]pon motion by the Defendant challenging venue in a patent

case, the Plaintiff bears the burden of establishing proper venue." *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). DDT cannot meet its burden to establish that venue is proper here.

### A.     Defendants Do Not Reside In This District

Domestic corporate defendants, like Google LLC and YouTube, LLC, "reside" only in their state of incorporation. *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1521 (2017). Venue is assessed as of the time of filing of the complaint. *See, e.g., SEVEN Networks*, 315 F. Supp. 3d at 941, n.7. When this action was filed, Google LLC and YouTube, LLC were incorporated in Delaware and therefore "reside" in Delaware, not Texas. Compl. ¶¶ 17-18; Durbin Decl. ¶ 6. Thus, Defendants' residence cannot provide a basis for venue in this District.

### B.     DDT Cannot Prove That Defendants Have A "Regular and Established Place Of Business" In This District Under *Cray*'s Three Factor Test

Under *TC Heartland*, venue in patent cases is only proper outside of a defendant's state of incorporation when the defendant maintains a "regular and established place of business" in the district. In *Cray,* the Federal Circuit set forth three factors that must be satisfied in order for a defendant to be deemed to have a regular and established place of business: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." 871 F.3d at 1360.

The first factor, a physical place, is just that: "a building or a part of a building set apart for any purpose" or "quarters of any kind." *Id*. at 1362. *Cray* provided examples such as a "formal office or store," "distribution centers, storing inventory that the employees then directly took to . . . clients" or "a secretarial service physically located in the district to perform certain tasks." *Id*. *Cray* also clarified that it "cannot be read to refer merely to a virtual space or to electronic communications." *Id*.

The second factor, "regular and established," requires showing that the "physical place" is one that "operates in a steady, uniform, orderly, and methodical manner" that is "settled certainly, or fixed permanently." *Id.* at 1362-63. "[W]hile a business can certainly move its location, it must for a meaningful time period be stable, established." *Id.* at 1363.

The third factor requires that the alleged place of business be a "place of the defendant." *Id.* "Relevant considerations include whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place." *Id.* "Marketing or advertisements also may be relevant, but only to the extent they indicate that the defendant itself holds out a place for its business." *Id.* For example, if a defendant "lists the alleged place of business on a website, or in a telephone or other directory; or places its name on a sign associated with or on the building itself," that could support a finding that this factor is met. *Id.* at 1363-64.

With these factors in mind, it is clear that Defendants do not have a "place of business" in this District. The *only* connection between Defendants and this District that DDT points to is the GGC servers. As detailed below, the GGC servers do not qualify as "regular and established places of business" under *Cray*'s three-factor test.

## 1.    *Cray* Factor 1: GGC Servers Are Not "Physical Places Of Business"

A GGC server is not a "physical place of business," such as "a building or a part of a building," but is instead a piece of hardware or equipment. *See* Ex. H, *BMC Software, Inc. v. Cherwell Software, LLC*, No. 1:17-cv-1074, Dkt. 55 at 4 (E.D. Va. Dec. 21, 2017) ("Servers are not real property; they are personal property" and thus not places of business for venue). Prior to the *SEVEN Networks* decision, this District found in *Personal Audio* that the GGC servers are "'hardware,' the physical electronic equipment used to operate the internet," as opposed to "'places' under the meaning of the statute," and "therefore cannot establish a regular and established place of business in this district." 280 F. Supp. 3d at 934 (holding GGC servers are

insufficient to establish venue).  In *Cupp*, the Northern District noted the "conflicting conclusions" in *SEVEN Networks* and *Personal Audio* and agreed with the latter's conclusion that servers are not a "place," explaining that the "business conducted" by the servers "involves electronic communications, which the Federal Circuit specifically stated cannot constitute a place."  Ex. A at 4, 5.

The ISPs' facilities where GGC servers are located do not belong to Defendants. McCallion Decl. ¶ 10. ███████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████ █ ████████████ ¶ 12. ████████████████
████████████████████████████████████████████████████
████████████████████████████████ *Id.* ███████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████ *Id.* ████████████████████████████████
████████████████████████████████ *Id.*

Even if the GGC servers could be said to be the required "physical places," they are not "places of business."  Servers are pieces of equipment, like slot machines or vending machines, and do not rise to the level of being places of business, such as an office, storefront or factory where staff work.  *HomeBingo Network, Inc. v. Chayevsky*, 428 F. Supp. 2d 1232, 1250 (S.D. Ala. 2006) ("That an individual may be a part owner of a piece of equipment (in this case, a slot machine) located in a judicial district does not render the situs of that equipment his regular and established place of business for venue purposes."); *Magee v. Coca-Cola Refreshments USA, Inc.*,

---

[3] Emphasis is added and citations and internal quotations are omitted unless indicated otherwise.

833 F.3d 530, 534 (5th Cir. 2016) (finding "vending machines are not 'sales establishments,'" and defining "establishment" as "a place of business or residence with its furnishings and staff"). As the Court in *Personal Audio* found:

> It might be true that part of Google's business relies on these servers, but that does not amount to Google's business being carried out from them. To conclude that Google's business was being carried out by these servers would have far-reaching consequences that distort the scope of the statute; for example, every single AT&T tower would then possibly become a place of business for AT&T.

280 F. Supp. 3d at 934; *see also* Ex. A at 6 (Judge Lynn's *CUPP* decision quoting the above passage and finding the first two *Cray* factors not satisfied by Symantec's servers).

The *SEVEN Networks* decision likened Google's GGC servers to warehouses. 315 F. Supp. 3d at 948. But unlike the GGC servers, a warehouse is real property staffed by employees of the business. A closer analogy for a GGC server, which temporarily stores or "caches" popular content for users, would be a storage locker. But courts have found storage lockers do not qualify as places of business. *See Regents of Univ. of Minn. v. Gilead Scis., Inc.*, 299 F. Supp. 3d 1034, 1043 (D. Minn. 2017) ("The Court is not persuaded that these relatively small storage lockers . . . constitute a sufficiently regular and established physical foothold of Gilead in Minnesota."); *CDx Diagnostic, Inc. v. U.S. Endoscopy Grp., Inc.*, No. 13-CV-5669(NSR), 2018 WL 2388534, at *3 (S.D.N.Y. May 24, 2018) (storage units are not a "place of business" under Section 1400(b) because "no employee or agent of Defendant actually conducts business at the storage units").

### 2. *Cray* Factor 2: GGC Servers Are Not "Regular And Established"

As the Federal Circuit explained in *Cray,* a "regular and established" place must be "'settle[d] certainly, or fix[ed] permanently.'" 871 F.3d at 1363 (quoting Black's Law Dictionary (1st ed. 1891)). █████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ McCallion Decl. ¶ 11 ████████████████

████████████████████████████████████████ *Id.* ¶ 12. ██████████████████

████████████████████████████████████████████████████████████████████████

████████████ is simply not enough to establish that Defendants' "place" in this District is "fix[ed]

permanently."  *Cray*, 871 F.3d at 1363.

### 3. *Cray* Factor 3: The GGC Servers are Not Ratified Places of Business

To satisfy the third factor, the "defendant must establish or ratify the place of business" in

question.  *Cray*, 871 F.3d at 1363.  "Relevant considerations include whether the defendant owns

or leases the place, or exercises other attributes of possession or control over the place."  *Id.* ████

████████████████████████████████████ McCallion Decl. ¶¶ 9, 12.  No Google

(or YouTube) employee even visited the GGC servers in question.  *Id.* ¶ 10.  ████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ *Id*. ¶¶ 9, 12.

Nor do Defendants own or lease the space within facilities of the ISPs where the servers are

stored.  ████████████████████████████████████████████████████████████

████████████ McCallion Decl. ¶ 12.  █████████████████████████████████

████████████████████████████████████████ *Id.* ██████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.* ██████████████

████████████████████████████████████████████████████████████████████████

████████████ *Id.* ████████████████████████████████████████████████████

████████████████████████████████ *Id.*

11

Other "[p]otentially relevant inquiries" in determining whether a location is a "place of business" of the defendant "include whether the defendant lists the alleged place of business on a website, or in a telephone or other directory; or places its name on a sign associated with or on the building itself." *Cray*, 871 F.3d at 1363-64.  Defendants, however, have done none of those things.  There is no Google or YouTube "sign" or other indication on any ISP-owned or leased facility containing GGC servers that the facility is a place of business of Google or YouTube.  Another consideration in assessing whether a "place of business" is "of the defendant" is "the nature and activity of the alleged place of business . . . *in comparison with* that of other places of business of the defendant in other venues." *Id.* at 1364 (emphasis original).  The GGC servers are a fraction of one percent of the total serving capacity of Google's network in the U.S.  McCallion Decl. ¶ 7.  Neither Google nor YouTube have an office or any data center in the District.  *Id.* ¶ 3; Lim Decl. ¶¶ 3, 5.  These considerations further confirm that the GGC servers were not a "place of business" of Defendants and that the GGC servers cannot provide a legally sufficient basis for venue under *Cray*.

## V.    THE COMPLAINT FAILS TO STATE PLAUSIBLE CLAIMS OF PRE-SUIT WILLFULNESS OR INDIRECT INFRINGEMENT

DDT's claims of willful and indirect infringement based on any pre-suit conduct should be dismissed for failure to state a claim.  Both indirect and willful infringement require notice of a patent at the time of the purportedly infringing conduct.  However, DDT alleges no facts that plausibly support an inference that Defendants had such notice pre-suit.

Under *Iqbal/Twombly*, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  To survive a motion to dismiss requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."

*Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 687.

To state a claim for induced infringement, "a plaintiff must allege facts to plausibly support the assertion that the defendant specifically intended a third party to directly infringe the plaintiff's patent and knew that the third party's acts constituted infringement." *Corydoras Techs., LLC v. Apple Inc.*, No. 2:16-CV-00538-JRG, 2016 WL 9242435, at *1 (E.D. Tex. Nov. 23, 2016). This "necessarily includes the requirement that [a defendant] knew of the patent." *Id.* at *1; *see also Babbage Holdings, LLC v. Activision Blizzard, Inc.*, Civ. No. 2:13-750-JRG, 2014 WL 2115616, at *2 (E.D. Tex. May 15, 2014).

A claim for willful infringement likewise requires knowledge of a patent at the time of the alleged infringement. *See Halo Elecs., Inc. v. Pulse Elecs, Inc.*, 136 S. Ct. 1923, 1932 (2016) (culpability is measured based on the "knowledge of the actor at the time of the challenged conduct"). Thus, claims for willful infringement based on conduct prior to service of a complaint require plausible allegations of pre-suit notice of the asserted patent.

DDT's complaint does not allege any bases for pre-suit knowledge by YouTube. As a result, the complaint does not plausibly support that YouTube was on notice of any of the patents-in-suit prior to the date of the complaint. While DDT alleges two bases for pre-suit knowledge of the patents-in-suit by Google, neither plausibly supports that Google was on notice of any patent-in-suit prior to the filing of this lawsuit.

*First*, DDT alleges it engaged in brief, pre-suit communications with Google shortly before filing this lawsuit. *See* Compl. ¶ 12. However, these allegations highlight that DDT directed Google's attention only to "certain Chinese patents" that DDT believed were infringed. *Id.* DDT did not mention any of the patents-in-suit, nor contend that they were infringed. *Id.* Instead, the

13

patents-in-suit were buried in a list of over 400 patents in DDT's portfolio.  *Compare id.* ¶ 12 (DDT "included a list of all patents owned by [DDT], including each of the patents-in-suit") *with id.* ¶ 9 (DDT's "portfolio includes over 1,000 patent assets, with over 400 issued patents").  Such facts are insufficient to establish the notice required to support a claim for pre-suit inducement or willfulness.  *See, e.g.*, *Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*, 2016 WL 1019667, at*3 (D. Del. Mar. 15, 2016) (allegations that a pre-suit letter listed the patents-in-suit among 85 patents and applications did not plausibly support pre-suit notice); *Cascades Comp. Innovation, LLC v. Samsung Elecs. Co. Ltd.*, 77 F. Supp. 3d 756, 766 (N.D. Ill. 2015) (granting summary judgment of no pre-suit notice where the plaintiff listed numerous patents and called attention to patents other than those in suit).

*Second*, for only one of the asserted patents—the '112 Patent—DDT alleges that a Google patent application and patent cited to the application that later issued as the '112 Patent.  *See* Compl. ¶¶ 11, 78.  However, both Google documents cited only to the '112 Patent's underlying application, not to the '112 Patent itself.[4]  It is axiomatic that a party cannot infringe a patent application and knowledge of an application is insufficient to provide notice of a later issued patent.  As the Federal Circuit explained:  "Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents.  What the scope of claims in patents that do issue will be is something totally unforeseeable."  *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985).

---

[4] DDT points to Google's U.S. Patent No. 8,787,454, attached as Exhibit F, and "U.S. Patent Appl. No. 10/003,793," which in fact is not a Google application.  *See* Compl. ¶ 11 & n.17.  A copy of U.S. Patent No. 10,003,793, which is assigned to Google, is attached as Exhibit G.  As DDT's allegations suggest, these patents do ***not*** cite to the '112 Patent itself, only to its underlying application, U.S. Patent App. No. 10/0166,069.

DDT did not allege any facts plausibly supporting pre-suit notice by Defendants of the patents-in-suit.  For nine of the ten patents-in-suit, DDT points only to communications with Google—none of which involved YouTube—where it called out unrelated Chinese patents.  And for the '112 Patent, DDT adds only that Google knew of a patent application, not that Google or YouTube ever had pre-suit knowledge of the later-issued patent.  Accordingly, DDT has failed to allege facts plausibly supporting the knowledge required for a claim of willful or induced infringement based on pre-suit conduct and such claims should be dismissed.

## VI.    CONCLUSION

Because Defendants do not have a "regular and established place of business" in this District under *TC Heartland* and *Cray*, Defendants respectfully request that the Court dismiss this action for improper venue.  Further, because DDT's complaint fails to allege facts to make out a plausible claim for pre-suit willful or induced patent infringement, Defendants respectfully request that the Court dismiss such pre-suit claims under Rule 12(b)(6).

Dated: January 11, 2019

*/s/ Krista S. Schwartz with permission,*
*by Michael E. Jones*

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
POTTER MINTON, P.C.
110 N. College Ave., Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

Krista S. Schwartz
Lead Attorney
ksschwartz@jonesday.com
JONES DAY
555 California Street, Suite 2600
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700

Michael C. Hendershot
mhendershot@jonesday.com
JONES DAY
1755 Embarcadero Rd.
Palo Alto, CA 94303
Telephone: (650) 739-3940
Facsimile: (650) 739-3900

**Attorneys for Defendants Google LLC and
YouTube, LLC**

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on January 11, 2019.

*/s/ Michael E. Jones*
Michael E. Jones

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the foregoing document is being filed under seal pursuant to Local Rule CV-5(a)(7)(C) which requires that a Motion to Seal be filed immediately prior hereto.

*/s/ Michael E. Jones*

17