IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **DYNAMIC DATA TECHNOLOGIES, LLC,** | § | |
| | § | |
| *Plaintiff*, | § | Civil Case No. 2:18-cv-466-RWS |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| **GOOGLE LLC AND YOUTUBE, LLC,** | § | **FILED UNDER SEAL** |
| | § | |
| *Defendants*. | § | |
| | § | |

**DEFENDANTS GOOGLE LLC AND YOUTUBE, LLC'S**
**<u>MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 1

LEGAL STANDARD ........................................................................................... 3

ARGUMENT ........................................................................................................ 4

I.    THIS ACTION COULD HAVE BEEN FILED IN THE NORTHERN DISTRICT ........ 4

II.   THE PRIVATE INTEREST FACTORS STRONGLY FAVOR TRANSFER ................ 5

    A.    The Northern District Is More Convenient for Potential Witnesses ..................... 5

        1.    The Northern District Is More Convenient For Non-Party Witnesses ................................................................................................ 5

        2.    The Northern District Is More Convenient For Party Witnesses ............... 7

    B.    The Northern District Possesses More Usable Subpoena Power .......................... 8

    C.    The Majority Of The Documentary Evidence Is Maintained Or Accessible In Or Near The Northern District ............................................................ 9

    D.    There Are No Practical Problems With Transferring This Case .......................... 10

III.  THE PUBLIC INTEREST FACTORS FAVOR TRANSFER ...................................... 11

    A.    The Northern District Has A Greater Interest In This Case ................................ 11

    B.    The Northern District Resolves Cases Slightly Faster ....................................... 12

    C.    The Remaining Public Interest Factors Are Neutral .......................................... 12

IV.   CONCLUSION ...................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Adaptix, Inc. v. HTC Corp.*,
  937 F. Supp. 2d 867 (E.D. Tex. 2013) ....................................................................13

*Affinity Labs of Tex. v. Samsung Elecs. Co., Ltd.*,
  968 F. Supp. 2d 852 (E.D. Tex. 2013) ....................................................................16

*Chrimar Sys., Inc. v. Juniper Networks, Inc.*,
  No. 6:15-cv-618, Dkt. 231 (E.D. Tex. Jan. 11, 2016) ............................................17

*In re Biosearch Techs., Inc.*,
  452 F. App'x 986 (Fed. Cir. 2011) .........................................................................15

*In re Genentech*,
  566 F.3d 1338 (Fed. Cir. 2009) ....................................................................... passim

*In re Google Inc.*,
  No. 17-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) .................................15, 17

*In re Hoffman-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009) ................................................................9, 14, 16

*In re Microsoft Corp.*,
  630 F.3d 1361 (Fed. Cir. 2011) ..............................................................................13

*In re Nintendo Co.*,
  589 F.3d 1194 (Fed. Cir. 2009) .........................................................................9, 16

*In re Toyota Motor Corp.*,
  747 F.3d 1338 (Fed. Cir. 2014) .........................................................................9, 12

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) .............................................................8, 10, 13, 17

*In re Verizon Bus. Network Servs. Inc.*,
  635 F.3d 559 (Fed. Cir. 2011) ..........................................................................10, 13

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ....................................................................8, 10, 13

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ..............................................................9, 10, 13, 16

*Monroe v. Walmart Stores Tex., LLC*,
    No. 2:11-cv-329-JRG, 2012 WL 3887006 (E.D. Tex. Sept. 6, 2012) ....................14

*On Semiconductor Corp. v. Hynix Semiconductor, Inc.*,
    No. 6:09-cv-390, 2010 WL 3855520 (E.D. Tex. Sept. 30, 2010)............................14

*Realtime Data LLC v. Teradata Operations, Inc.*,
    Nos. 6:15-CV-463, 6:15-CV-470-RWS-JDL, 2016 WL 235183 (E.D. Tex.
    Jan. 20, 2016)........................................................................................................10

*TransUnion Intelligence LLC v. Search Am., Inc.*,
    2011 WL 1327038 (E.D. Tex. Apr. 5, 2011) ..........................................................16

*Vigilos, LLC v. Sling Media, Inc.*,
    No. 2:11-cv-112, Dkt. 50 (E.D. Tex. July 25, 2011) ..............................................17

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
    No. 2:10-cv-364-JRG, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ......................16

**STATUTES**

28 U.S.C. §§ 1391(b)-(c) ...............................................................................................10

28 U.S.C. § 1404 ............................................................................................................6

28 U.S.C. § 1404(a) ................................................................................................8, 9, 10

28 U.S.C. § 1400(b) ......................................................................................................10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 45(c)(1)(A) ...........................................................................................13

Fed. R. Civ. P. 45(c)(1)(B)(ii)........................................................................................14

## INTRODUCTION

Pursuant to 28 U.S.C. § 1404, Defendants Google LLC and YouTube, LLC (collectively, "Google") move to transfer this action to the Northern District of California ("Northern District"). The most appropriate forum for this case is the Northern District. While this District has little to no connection to the case, the Northern District is convenient for the Parties, for potential third-party witnesses, and in light of the evidence likely to be presented in this case.

Google does not have any offices or ██████████ in this District. (Ex. A, Orr Decl., ¶¶ 19-20.) Rather, Google's headquarters are located in the Northern District and the greatest concentration of Google employees, including those with knowledge regarding the function, operation, design, and development of the features and products accused of infringement, are in the Northern District. (*Id.* ¶¶ 7, 9-12.) Nor does Plaintiff Dynamic Data Technologies, LLC ("DDT") appear to have any connection to this District. Rather, DDT is incorporated in Delaware and does not allege to have any Texas-based offices or employees. (*See* Complaint ¶¶ 14-16.)

Further, several third-party witnesses are located in the Northern District, including the named inventors of two of the asserted patents, and attorneys, law firms and legal departments who were involved in the prosecution of eight of the asserted patents. (Ex. B-R.) Because no named inventors or prosecuting attorneys live in this District, none can be compelled to participate at a trial in this District

In view of this case's strong connection to the Northern District and the lack of connection to this forum, this action should be transferred to the Northern District.

## BACKGROUND

Google is a Delaware LLC headquartered in Mountain View, California. (Ex. A, Orr Decl., ¶ 9.) YouTube is also a Delaware LLC and is headquartered in San Bruno, California. (*Id.* ¶ 7.)

3

Both Mountain View and San Bruno are located in the Northern District. (*Id.* ¶¶ 7, 9.)  Google's Mountain View headquarters operate as Google's strategic business center, and had approximately █████ employees in November 2018. (*Id.* ¶ 9.)  Google also has offices in San Francisco and San Bruno, California, which are also within the Northern District.  (*Id.*)  Overall, █████ of Google's total U.S. employees work in Google's offices in the Northern District of California.  (*Id.* ¶ 9.)

The allegations in DDT's complaint accuse a variety of Google products of infringement. Specifically, DDT asserts that the Google Cloud Platform, various Google devices (*i.e.,* Chromecast Ultra, Google Cast, Google Pixel), YouTube products (*i.e.*, the YouTube website, YouTube TV, YouTube Live Streaming Platform, YouTube App), Google Photos, Google Duo, and Android 5.0+ ("Accused Products") infringe one or more of the asserted patents.  (*See* Complaint ¶¶ 120, 142, 164, 187, 207, 228, 248, 270, 291, 316.)  But, Google develops those Accused Products predominantly in Google's Northern District offices (Ex. A, Orr Decl., ¶¶ 12-17) and key employees who work on the Accused Products are located in the Northern District, including key engineers involved in developing the accused features.  (*Id.*)

Decisions related to Google's overall business are made by managers and employees primarily located in the Northern District, including the most significant engineering, development, design, functionality and implementation decisions related to the Accused Google Offerings.  (*Id.* at ¶¶ 10-12.)  Similarly, the vast majority of the finance team responsible for the Accused Products are located in the Northern District.  (*Id.* ¶ 10.)  Google employees based in the Northern District who have relevant knowledge regarding the Accused Google Offerings include:

- █████████████████████████████████████



In contrast, Google has no offices, and consequently no employees who work at any Google office, in this District. (*Id.* ¶19.) Similarly, because the majority of employees with relevant knowledge of the Accused Products are based in the Northern District, any hard copies of documents and employee notebooks from these employees would likely also be located there. (*Id.* ¶¶ 12-18.)

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The law of the local circuit in which the case was originally brought governs the analysis of a transfer motion. *See In re Genentech*, 566 F.3d 1338, 1341-42 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

The movant must first show that the case could have been brought in the proposed transferee district. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("Volkswagen I"). If

so, the court evaluates the relative convenience of the transferee district and the original district. The determination does not require that the "transferee forum is far more convenient." *In re Toyota Motor Corp*., 747 F.3d 1338, 1341 (Fed. Cir. 2014) (emphasis in original). This process involves the analysis of private and public interest factors. *Id.*

The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to ensure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen of Am., Inc*., 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interest decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id*.

The proposed transferee forum is "clearly more convenient" where, as here, most potential witnesses and relevant evidence are concentrated in the transferee district. *In re Nintendo Co*., 589 F.3d 1194, 1198 (Fed. Cir. 2009); *see In re Hoffman-La Roche Inc*., 587 F.3d 1333, 1336-37 (Fed. Cir. 2009). The presence of witnesses and evidence outside both forums does not factor into the transfer analysis. *See Toyota*, 747 F.3d at 1340. Likewise, plaintiff's choice of venue is not relevant because the "Fifth Circuit forbids treating the plaintiff's choice of venue as a factor in the analysis of a request to transfer." *Nintendo*, 589 F.3d at 1200.

## ARGUMENT

## I.    THIS ACTION COULD HAVE BEEN FILED IN THE NORTHERN DISTRICT

The threshold determination under §1404(a) "is whether [the] civil action might have been brought in the destination venue." *Volkswagen II*, 545 F.3d at 312. "Any civil action for patent

6

infringement may be brought in the judicial district where the defendant resides." 28 U.S.C. § 1400(b); 28 U.S.C. §§ 1391(b)-(c) (corporate defendant is "deemed to reside in any judicial district in which it is subject to personal jurisdiction"). Given that Google is headquartered in the Northern District of California, this action could have been brought there. Accordingly, the transfer analysis turns on weighing the private and public interest factors. *Volkswagen II*, 545 F.3d at 312.

## II.     THE PRIVATE INTEREST FACTORS STRONGLY FAVOR TRANSFER

### A.     The Northern District Is More Convenient for Potential Witnesses

"The convenience of the witnesses is probably the single most important factor in transfer analysis." *Genentech*, 566 F.3d at 1343. Because the Northern District is more convenient for potential party and non-party witnesses, this key factor thus weighs heavily in favor of transfer. *In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 561 (Fed. Cir. 2011) (granting mandamus in view of "stark contrast in convenience and fairness with regard to the identified witnesses").

Moreover, under the Fifth Circuit's 100-mile rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 204-05 (5th Cir. 2004) (per curiam); *see also TS Tech*, 551 F.3d at 1320; *Realtime Data LLC v. Teradata Operations, Inc.*, Nos. 6:15-CV-463, 6:15-CV-470-RWS-JDL, 2016 WL 235183, at *5 (E.D. Tex. Jan. 20, 2016) (finding that allowing witnesses to "remain in their home state . . . significantly minimiz[es] the cost, time, and expense of travel to attend trial, which is the very purpose of § 1404(a)").

### 1.     The Northern District Is More Convenient For Non-Party Witnesses

There are several non-party witnesses likely to be called to testify in this case that reside and/or work in the Northern District. First, the named inventors on two of the patents-in-suit live

7

and/or work in the Northern District.  Richard Chi-Te Shen, listed as the sole inventor of U.S. Patent No. 8,135,073 ("'073 Patent"), lives in Morgan Hill, California and works in Santa Clara, California (both are in the Northern District).  (Ex. B, https://www.linkedin.com/in/richard-shen-45116a/; Ex. C, '073 Patent.)  The face of U.S. Patent No. 7,542,041 ("'041 patent") lists Santanu Dutta and Jens Rennertas both as co-inventors and residents of the Northern District.  (Ex. D, '041 Patent.)    Mr.    Dutta    also    works    in    the    Northern    District.    (Ex.    E, https://www.linkedin.com/in/sadutta/.)  Each of these named inventors may need to testify about the conception and reduction to practice of the alleged invention, prior art of which they were aware, and their respective roles in connection with the alleged inventions.

Second, many of the lawyers, law firms and corporate legal departments involved in the prosecution of the patents-in-suit are also located in the Northern District.  As shown below, eight of the patents-in-suit involved attorneys and entities presently located in the Northern District.

| Patent | Northern District witnesses involved in the patent prosecution |
|---|---|
| 8,135,073 | Timothy W. Lohse works in the Silicon Valley office of DLA Piper.  (Ex. F, https://www.dlapiper.com/en/us/people/l/lohse-timothy/)<br>Andrew B. Schwaab works in the Silicon Valley office of Greenberg Traurig.  (Ex. G, https://www.gtlaw.com/en/professionals/s/schwaab-andrew-b)<br>DLA Piper's Silicon Valley office was involved in prosecution of the '073 Patent.  (Ex. H, '073 Patent File History excerpt.) |
| 8,073,054 | Thomas H. Ham lives in Upland, CA and works in the San Jose, CA office of Wilson & Ham.  (Ex. I, https://bhipr.ip-dash.com/Attorney/Profile/Thomas/H/Ham/43654/9916;jsessionid=C975A6BF97F1400CCA27B480F5A3C2BA)<br>David L. Alberti works in the Menlo Park, CA office of Feinberg Day.  (Ex. J, https://feinday.com/ourteam/partners/david-alberti/)<br>DLA Piper's Silicon Valley office was involved in prosecution of the '054 Patent.  (Ex. K, '054 Patent File History excerpt.) |
| 6,774,918 | Michael Ure works in the San Francisco Bay Area of California.  (Ex. L, https://www.linkedin.com/in/usefulartsip/) |

| 8,184,689 | Timothy W. Lohse works in the Silicon Valley office of DLA Piper. (Ex. F) |
| | David L. Alberti works in the Menlo Park, CA office of Feinberg Day. (Ex. J) |
| | DLA Piper's Silicon Valley office was involved in prosecution of the '689 Patent. (Ex. M, '689 Patent File History excerpt.) |
| 8,311,112 | Thomas H. Ham lives in Upland, CA and works in the San Jose, CA office of Wilson & Ham. (Ex. I) |
| | DLA Piper's Silicon Valley office was involved in prosecution of the '112 Patent. (Ex. N, '112 Patent File History excerpt.) |
| | NXP B.V. IP Department in San Jose, CA was involved in prosecution of the '112 Patent. (Ex. O, '112 Patent File History excerpt.) |
| 7,894,529 | DLA Piper's Silicon Valley office was involved in prosecution of the '529 Patent. (Ex. P, '529 Patent File History excerpt.) |
| 7,542,041 | Michael Ure works in the San Francisco Bay Area of California. (Ex. L.) |
| | NXP IP & Standards in San Jose, CA was involved in prosecution of the '041 Patent. (Ex. Q, '041 Patent File History excerpt.) |
| 7,571,450 | NXP IP & Standards in San Jose, CA was involved in prosecution of the '450 Patent. (Ex. R, '450 Patent File History excerpt.) |

Each of these above witnesses may need to testify about interactions with the U.S. Patent Office during prosecution of the asserted patents and prior art of which they were aware and may have documents related to the prosecution of the asserted patents.

By contrast, Google is not aware of any non-party witness who resides or works in the Eastern District. *Toyota*, 747 F.3d at 1340.

## 2.    The Northern District Is More Convenient For Party Witnesses

The Northern District is also more convenient for party witnesses. As discussed above, most of the relevant Google witnesses reside in the Northern District. Each of these witnesses will face a real and unnecessary burden in connection with traveling to this District for a trial. This burden is not just monetary expense and loss of productivity for Google; the burden also includes time spent away from family and work and community commitments. In such circumstances, the

Fifth Circuit instructs that "personal costs associated with being away from work, family, and community" counsel in favor of transfer. *Volkswagen II*, 545 F.3d at 317.

Application of the Fifth Circuit's 100-mile rule underscores that the convenience of the witnesses supports transfer. Most of Google's employees with relevant knowledge are based in the Northern District of California, which is more than 100 miles away from this District. *See TS Tech,* 551 F.3d at 1320 (holding that failure to apply 100-mile rule constituted clear error). In contrast, Google has no offices or relevant Google witnesses, in this District. (Ex. A, Orr Decl. ¶¶ 13-19.) Nor is Google aware of any DDT employees or witnesses in this District. (See Compl. ¶ 14.) But even if DDT employs people in this District, this is outweighed by the numerous witnesses located in the Northern District. *In re Microsoft Corp*., 630 F.3d 1361, 1364 (Fed. Cir. 2011) (finding that the district court does not have to "honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient").

Taking all of the relevant witnesses into consideration, this important factor weighs heavily in favor of transfer. *Volkswagen I*, 371 F.3d at 204-05; *Genentech*, 566 F.3d at 1345; I*n re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 561 (Fed. Cir. 2011) (ordering transfer given the "stark contrast in convenience and fairness with regard to the identified witnesses").

### B.    The Northern District Possesses More Usable Subpoena Power

A court may compel a non-party witness to attend depositions or trial within 100 miles from his or her residence. Fed. R. Civ. P. 45(c)(1)(A). "Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses" than the transferor district. *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013). A court has "absolute subpoena power" over a witness when that court can compel that witness to

10

attend depositions and trial. *In re Hoffman La-Roche Inc.*, 587 F.3d 1333, 1337-38 (Fed. Cir. 2009). "The fact that the transferee venue is a venue with usable subpoena power . . . weighs in favor of transfer, and not only slightly." *Genentech*, 566 F.3d at 1345. If a trial is more than 100 miles from a non-party's witness's residence, but within the state, the court may compel attendance so long as the witness would not incur "substantial expense." Fed. R. Civ. P. 45(c)(1)(B)(ii).

Here, as discussed above, there are non-party witnesses who are relevant to this case that are located in the Northern District or in California where the Northern District has subpoena power. Each of these witnesses stand to incur more expenses traveling to this District than to the Northern District. *Cf. Monroe v. Walmart Stores Tex., LLC*, No. 2:11-cv-329-JRG, 2012 WL 3887006, at *3 (E.D. Tex. Sept. 6, 2012). And the Northern District has absolute subpoena power over relevant inventor witnesses because that court—unlike this District—can compel those witnesses to attend both depositions and trial. *See Hoffman La-Roche*, 587 F.3d at 1337-38. On the other hand, Google is not aware of any relevant third party witnesses who reside or work in this District. Given the one-sided balance of witnesses within the respective subpoena powers of this District and the Northern District, both parties will be better equipped to present relevant evidence at trial if this case proceeds in the Northern District—this factor weighs heavily in favor of transfer.

### C.     The Majority Of The Documentary Evidence Is Maintained Or Accessible In Or Near The Northern District

This factor "turn[s] upon which party . . . will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues." *On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, No. 6:09-cv-390, 2010 WL 3855520, at *2 (E.D. Tex. Sept. 30, 2010). A patentee's ties with the District should be

discounted "where an invention has no connection with Texas." *In re Biosearch Techs., Inc.*, 452 F. App'x 986, 988 (Fed. Cir. 2011).

Turning first to the Northern District, as is true in most patent infringement cases, the majority of the relevant evidence in this case will come from the defendant, Google. *Genentech,*, 566 F.3d at 1345. As noted above, much of the evidence relating to the Accused Google Offerings is likely to be found in the Northern District. In addition to evidence from Google, other sources of evidence, including from the named inventors of two of the patents-in-suit, also favor the Northern District. As explained above, the named inventors on two of the patents-in-suit reside and/or work in California. Thus, highly relevant and unique information relating to the conception and reduction to practice of the claimed inventions would be found there.

Patent attorneys, law firms and corporate legal departments who had involvement with the prosecution of eight of the patents-in-suit are also located in the Northern District. (See supra II.A.1) Thus, critical information relating to claim interpretation, infringement, and the validity of the asserted patents may also be found in the Northern District.

Turning to this District, Google is unaware of any sources of evidence in this District, let alone any sources that would outweigh the volume of potential evidence in the Northern District. In sum, there is minimal relevant documentary evidence—if any—in this District. Under similar facts, the Federal Circuit has found that this factor "weighs strongly in Google's favor." *In re Google Inc*., No. 17-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017).

### D.    There Are No Practical Problems With Transferring This Case

There are no practical problems with transferring this case. This case is still in its infancy as: (i) briefing on Google's January 11, 2019 motion to dismiss DDT's complaint is not yet complete; and (ii) discovery on the merits is just getting underway. Accordingly, this factor is

neutral. *See, e.g., TransUnion Intelligence LLC v. Search Am., Inc.,* 2011 WL 1327038, at *5 (E.D. Tex. Apr. 5, 2011) (concluding that this factor is neutral given that only limited discovery occurred).

## III.    THE PUBLIC INTEREST FACTORS FAVOR TRANSFER

### A.    The Northern District Has A Greater Interest In This Case

As detailed above, Google's activities related to the Accused Google Offerings are primarily centered in the Northern District.  Because DDT's allegations call into question "the work and reputation" of engineers responsible for work related to these products as well as Google's own reputation, the Northern District's "interest in this case remains strong."  *Hoffman-La Roche,* 587 F.3d at 1336; *see also Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-cv-364-JRG, 2012 WL 506669, at *6 (E.D. Tex. Feb. 15, 2012).  Further, at least two of the named inventors, Santanu Dutta and Jens Rennert, resided in (and continue to reside in) the Northern District, when the application leading to the '041 Patent application was filed.  At the time, both worked for Philips Electronics North America Corporation in San Jose, California.  (Ex. U, '041 Patent File History excerpt.)  The Northern District thus "has an interest in protecting intellectual property rights that stem from research and development in Silicon Valley."  A*ffinity Labs of Tex. v. Samsung Elecs. Co., Ltd.*, 968 F. Supp. 2d 852, 855 (E.D. Tex. 2013).

In contrast, DDT's infringement allegations in its complaint (*see* Complaint ¶¶ 118-339) have no connection to the Eastern District that could not be drawn to any other district in the country.  *Volkswagen II*, 545 F.3d at 318 (noting that a rationale based on such connections "could apply virtually to any judicial district or division in the United States; it leaves no room for consideration of those actually affected—directly and indirectly—by the controversies and events giving rise to a case."); *Nintendo*, 589 F.3d at 1198.  The fact that Google makes its services and

13

products available nationally does not establish an interest in having the case tried here. *TS Tech*, 551 F.3d at 1321; *see also Vigilos, LLC v. Sling Media, Inc*., No. 2:11-cv-112, Dkt. 50 at 11 (E.D. Tex. July 25, 2011) ("[T]his case is not tied to the Eastern District in any manner that would not apply to most other districts, including the Northern District."). On balance, this factor weighs in favor of transfer. *Chrimar Sys., Inc. v. Juniper Networks, Inc.*, No. 6:15-cv-618, Dkt. 231 at 12 (E.D. Tex. Jan. 11, 2016); Google, 2017 WL 977038, at *3 n.3.

### B.    The Northern District Resolves Cases Slightly Faster

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *Genentech*, 566 F.3d at 1347. In terms of disposition by trial, the Northern District's median time is 25.9 months compared to Eastern District's 27 months (Ex. S.) In terms of time to disposition for civil cases, the Northern District's median time is 7.9 months compared to the Eastern District's 8.7 months. (Ex. T.) Accordingly, this factor weighs slightly in favor of transfer.

### C.    The Remaining Public Interest Factors Are Neutral

The remaining public interest factors are neutral. Both districts are also familiar with and can apply the federal patent laws to this patent infringement case. *TS Tech*, 551 F.3d at 1320.

## IV.    CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court transfer this action to the Northern District of California.

14

Dated: June 28, 2019                                  /s/ *Krista S. Schwartz*

Krista S. Schwartz
ksschwartz@jonesday.com
JONES DAY
555 California Street, Suite 2600
San Francisco, CA 94104
Telephone: (415) 626-3939

Michael C. Hendershot
mhendershot@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: (650) 739-3900

Michael E. Jones
SBN: 10929400
mikejones@potterminton.com
Patrick C. Clutter
SBN: 24036374
patrickclutter@potterminton.com
POTTER MINTON
110 N. College, Suite 500
Tyler, Texas 75702
Tel: 903-597-8311

Attorneys for Defendants Google LLC and
YouTube, LLC

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on June 28, 2019.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on June 28, 2019.

*/s/ Krista S. Schwartz*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in the lead and consolidated actions.

*/s/ Krista S. Schwartz*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Google has complied with the meet and confer requirement in Local Rule CV-7(h).  The personal conference required by Local Rule CV-7(h) was conducted on June 27, 2019 via telephonic conference with the following participants: Michael Hendershot for Google and Daniel Hipskind for DDT.  This motion is opposed.

*/s/ Krista S. Schwartz*